UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

**CHARLES ROBERT STOUT**  CASE NO. 6:22-CV-06036

**VERSUS**  JUDGE TERRY A. DOUGHTY

**SMITH INTERNATIONAL INC ET AL**  MAGISTRATE JUDGE CAROL B. WHITEHURST

## REPORT AND RECOMMENDATION

Plaintiff appeals the denial of long-term disability benefits under an ERISA plan sponsored by Smith International, Inc. and administered by Metropolitan Life Insurance Company ("MetLife"). The parties have fully briefed the merits (Rec. Doc. 64, 67 and 68). Pursuant to the provisions of 28 U.S.C. §636 and the standing orders of this Court, and considering the administrative record, the law, and the arguments of the parties, and for the reasons explained below, the Court recommends that MetLife's termination of benefits be upheld and that Plaintiff's appeal be dismissed.

## Facts and Procedural History

In ruling on the parties' previous motions for partial summary judgment, the Court provided the following pertinent factual background:

> This case arises from a termination of Stout's long-term disability benefits under an employee benefit welfare plan ("LTD Plan"). Smith established the LTD Plan to provide eligible employees with long-term disability benefits. Smith also established a short-term

disability benefits plan ("STD Plan") for eligible employees. Benefits under both plans extended to employees of its subsidiary companies. Pathfinder, Inc., a subsidiary of Smith, employed Stout. Stout participated in both the STD and LTD Plans.

After receiving twenty-six (26) weeks of payments under the STD Plan, Stout became eligible for long-term disability benefits under the LTD Plan. Stout received long-term disability benefits from March 22, 2012, to January 29, 2014. On February 21, 2014, MetLife terminated Stout's long-term disability benefits. Stout appealed this termination pursuant to the procedures outlined in the LTD Plan, and MetLife ultimately reinstated his long-term disability benefits. On September 3, 2021, MetLife informed Stout that it had terminated his long-term disability benefits.

(Rec. Doc. 54, p. 1-2. Footnotes/record citations omitted.)

In ruling on the parties' cross motions for partial summary judgment, the Court found that MetLife is a fiduciary under the terms of the LTD plan and that it had discretionary authority to terminate Stout's LTD benefits. (Rec. Doc. 54). The Court explicitly did not address the merits of Stout's claim to benefits, which now comes before the Court. MetLife submitted the administrative record (Rec. Doc. 37-39), and Stout stipulated as to its completion (Rec. Doc. 57).

## Law and Analysis

Stout brings this action pursuant to 29 U.S.C. § 1132 (a)(1)(B) to recover benefits allegedly due to him under the terms of his LTD plan. Governed by the standard enunciated in *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101 (1989), the Fifth Circuit explained the deferential standard of review applicable to this ERISA case as follows:

> Where a benefits plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan, the reviewing court applies an abuse of discretion standard to the plan administrator's decision to deny benefits. This is the functional equivalent of arbitrary and capricious review: there is only a semantic, not a substantive, difference between the arbitrary and capricious and the abuse of discretion standards in the ERISA benefits review context. A decision is arbitrary if it is made without a rational connection between the known facts and the decision. This court owes no deference, however, to an administrator's unsupported suspicions.
>
> In addition to not being arbitrary and capricious, the plan administrator's decision to deny benefits must be supported by substantial evidence. Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.
>
> Ultimately, this court's review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision falls somewhere on a continuum of reasonableness—even if on the low end.

*Anderson v. Cytec Indus., Inc.,* 619 F.3d 505, 511-12 (5th Cir. 2010) (cleaned up).

Stout devotes a bulk of his briefing to re-urged arguments that MetLife was not authorized to terminate the benefits; however, the Court has already decided the issue (Rec. Doc. 54) and will not re-visit the issue here.

### I. **Whether MetLife had a conflict of interest.**

Stout argues MetLife had a conflict of interest as both the insurer and as administrator (though Stout argues MetLife had no authority to make eligibility determinations). Although "the court must take into consideration the conflict of interest inherent in a benefits system in which the entity that pays the benefits [and]

3

maintains discretionary control over the ultimate benefits decision," the inherent conflict of interest is not a significant factor absent evidence that the conflict influenced the decision maker and particularly in cases in which the employing entity employs a third-party benefits administrator. *Id.* at 512. Otherwise, a "structural" conflict of interest—when the plan administrator both evaluates claims and pays benefits claim—should be accorded little weight where the administrator undertook an extensive investigation. *Foster v. Principal Life Ins. Co.,* 920 F.3d 298, 307 (5th Cir. 2019). In this case, MetLife conducted an extensive investigation into Stout's claims of ongoing disability, as discussed below. Thus, the Court affords little weight to MetLife's conflict of interest.

## II. Whether MetLife's decision to terminate benefits was arbitrary and capricious.

Having rejected Stout's conflict of interest argument, the Court considers the merits of Stout's claim. Under 29 U.S.C. §1132(a)(1)(B), the claimant bears the burden of demonstrating that the denial of benefits under the plan was arbitrary and capricious. *Anderson*, 619 F.3d at 512-13.

Stout's LTD plan afforded benefits upon proof of disability. (Rec. Doc. 37-1, p. 32). The plan called for periodic requests for proof disability, including physical exams, exams by independent medical examiners, interviews, and functional capacity exams. (*Id.*) Under the plan, "disabled" or "disability" means that "due to Sickness or as a direct result of accidental injury:

4

- You are receiving Appropriate Care and Treatment and complying with the requirements of such treatment; and
- You are unable to earn:
    - during the Elimination Period and the next 24 months of Sickness or accidental injury, more than 80% of Your Predisability Earnings at Your Own Occupation from any employer in Your Local Economy; and
    - after such period, more than 60% of your Predisability Earnings from any employer in Your Local Economy at any gainful occupation for which You are reasonably qualified taking into account Your training, education and experience."

(*Id*. at p. 22).

The administrative record shows that, pursuant to the terms of the policy, on September 3, 2019, MetLife requested Stout to provide information in support of his continued disability. (Rec. Doc. 37-2, p. 225). In response, Stout responded with information showing that he had seen only his cardiologist, Dr. Barker, in the prior twelve months, that he was not working, and that his daily routine included driving his children to school and activities, some light housework, and assisting with meals and cooking. (Rec. Doc. 37-2, p. 238-39).

Medical records from Stout's cardiologist, Dr. Barker, show that in July 2019, Stout had remained relatively well from a general and cardiovascular standpoint without exertional induced chest discomfort, palpitations, lightheadedness, or dyspnea on exertion. The heart exam at that time showed Stout had a regular rate and rhythm along with a grade 1/6 systolic ejection murmur. His known valvular heart disease and ascending aorta aneurysm were noted as stable, while his

5

dyslipidemia and obesity were worsening. (Rec. Doc. 37-2, p. 63-65). An echocardiogram in December 2019 revealed multiple findings, including trace-to-mild pulmonic valve regurgitation, atrial septal aneurysm without clotting with small patent foramen ovale with some right-to-left shunting, and left atrial enlargement. (Rec. Doc. 37-2, p. 87). In comparing a second echocardiogram completed in February 2021, Dr. Barker concluded there was mild improvement in both Stout's mitral regurgitation and aortic aneurysm. (Rec. Doc. 37-2, p.128-29).

In a follow-up in April 2021, Dr. Barker noted that Stout remained relatively well from a general and cardiovascular standpoint. He had begun an exercise program with some weight loss and improved respiratory and general wellbeing. His home blood pressure readings had remained in normal limits, and he did not have edema or orthopnea. He was instructed to periodically follow up. (Rec. Doc. 37-2, p.131-34).

With the foregoing medical evidence, in August 2021, MetLife obtained a Physician Consultant Review report from Dr. Stanley Chou, board certified in Internal Medicine and Cardiovascular Disease. Dr. Chou opined that Stout did not "suffer from a medical condition or combination of conditions of such severity to warrant the placement of restrictions and/or limitations on his activities for the time period of 7/28/2021 onward." Dr. Chou concluded that Stout is not totally restricted from work despite symptoms of mild chest discomfort and fatigue. He had moderate

aortic and mitral regurgitation but no evidence of pulmonary congestion. He had pulmonary hypertension and OSA, but he was not hypoxic. He did not require oxygen supplementation and had no recurrent syncopal episodes or focal neurologic impairment. He believed Stout was capable of sustaining full-time work and requested Dr. Barker to provide functional limitations and activity restrictions. (Rec. Doc. 37-4, p. 246-51). In response to Dr. Chou's request, Dr. Barker advised a MetLife nurse consultant that he agreed with Dr. Chou's PFR and that Stout had the ability to return to work full time. (Rec. Doc. 37-4, p. 414).

In the meantime, MetLife continued investigating Stout's disability. A report from MetLife's investigator revealed that Stout had founded a private basketball program, the Acadiana Redhawks, in 2012. He had served as the president of the program and coached various teams from 2012 through 2020. (Rec. Doc. 37-2, p. 287-327). MetLife's investigator also conducted surveillance in June 2020. On June 14, 2020, the investigator observed Stout and a young male load construction materials, including three 4X4X8 boards and four ready-made wood deck railings, into the back of a truck. According to the report, Stout then unloaded the items at his home, including placing two of the 4X4X8 boards on his shoulders at the same time, while talking and laughing with the young male. (Rec. Doc. 37-2, p. 351-46).

Based on the foregoing evidence, MetLife terminated Stout's benefits on September 3, 2021. (Rec. Doc. 37-4, p. 333-35). In response to Stout's appeal,

MetLife engaged a second physician, Dr. Andre Akhondi, also board certified in Internal Medical and Cardiovascular Disease, to address Stout's disability. Dr. Akhondi opined that Stout did not suffer from a medical condition(s) sufficient to warrant restrictions or limitations and that he was capable of working on a full-time basis. Dr. Akhondi's opinion remained as such even after he considered new evidence of Stout's February 2022 CT angiogram, which revealed a mildly dilated ascending aorta, essentially unchanged, without aortic dissection or plaquing or luminal compromise. (Rec. Doc. 37-5, p. 73-79). Based on Dr. Akhondi's report and the fact that Dr. Barker, when asked for input, did not respond to his conclusions, MetLife denied Stout's appeal, sustaining its termination of benefits. (Rec. Doc. 37-5, p. 66-68; 71,).

    On appeal to this Court, Stout relies primarily on medical evidence pre-dating the 2021 termination of benefits, often by years, which the Court finds unpersuasive. Stout failed to offer any countervailing evidence to MetLife's conclusion that his current medical condition does not preclude full time employment. MetLife engaged two different board-certified cardiologists to review Stout's medical records and opine on possible restrictions or limitations for his condition. Both concluded Stout could return to work full-time and requested Dr. Barker, Stout's treating cardiologist, to provide specific restrictions; however, even Dr. Barker agreed that he is capable of returning to work, without providing recommendations for limitations or

restrictions. MetLife's decision to terminate benefits was further bolstered by evidence of Stout's ongoing activities relating to coaching basketball and operating a youth basketball program. This evidence reasonably suggests Stout is capable of working in some capacity. The administrative record is devoid of any evidence that, at the time of MetLife's termination of benefits, Stout's ability to work was restricted or limited in any way.

This case is factually similar to the Fifth Circuit's holding in *Corry, v. Liberty Life Ass. Co.*, finding that the plan administrator did not abuse its discretion in terminating benefits to the claimant, where the administrator investigated the claim for over two and one-half years and consulted three specialists. *Corry,* 499 F.3d at 403. Although MetLife did not obtain a labor market study as did the administrator in *Corry*, MetLife did not have any evidence to suggest that Stout should be subject to any restrictions or limitations, as was relevant in *Corry*. Accordingly, the Court finds that MetLife did not abuse its discretion in terminating Stout's benefits.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

THUS DONE in Chambers, Lafayette, Louisiana on this 24th day of June, 2024.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE